IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TREVOR FITZGIBBON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-247-REP |
| ) | |
| ) | |
| JESSELYN A. RADACK ) | |
| ) | |
| Defendant. ) | |
| ) | |

# NOTICE OF NONCOMPLIANCE
# WITH COURT'S ORDER REQUIRING STATUS REPORTS

# -and-

# NOTICE OF STATUS OF BANKRUPTCY CASE

Plaintiff, Trevor Fitzgibbon, by counsel, files Notice with the Court that Defendant, Jesselyn Radack ("Radack"), has failed to comply with the Court's Order entered on October 30, 2018 [*ECF No. 75*] ordering Radack to file reports advising the status of this matter in bankruptcy:

1. Four (4) days after the Court set the trial date and issued its Jury Initial Pretrial Order in this matter [*ECF No. 68*], Radack filed for Chapter 11 bankruptcy protection in the District of Columbia.

2. On October 30, 2018, the Court entered an Order that stayed this action and ordered Radack to file monthly status reports by November 15, 2018 and "every 30

1

days thereafter" – said reports to include "the progress of the bankruptcy and ***any*** developments that affected the District Court action." [*ECF No. 75 (emphasis added)*].

3. On October 31, 2018, Radack filed a motion to transfer this case to the United States Bankruptcy Court for the District of Columbia. [*ECF No. 76*].

4. On November 16, 2018, Radack filed a status report with the Court in which she represented that her "bankruptcy case remains open and pending and Defendant is still in the process of formulating a Chapter 11 Plan." [*ECF No. 78*].

5. On December 15, 2018, Radack filed a status report in which she represented that she had begun drafting a Chapter 11 Plan of Reorganization which she expected to file "in the next 45 days". [*ECF No. 80*].

6. On January 18, 2019, Radack filed a status report in which she represented that she had begun drafting "the statutory disclosure" "under 11 U.S.C. § 1125". Radack further represented that she anticipated filing a Chapter 11 Plan of Reorganization "in the next 20 days". [*ECF No. 81*].

7. On February 6, 2019, the Court denied Radack's motion to transfer venue of the action to the Bankruptcy Court. [*ECF No. 83*]. In an accompanying Memorandum Opinion, the District Court ruled that:

> "it seems clear to the Court that, as Fitzgibbon argues, Radack's bankruptcy action was filed solely to avoid this litigation. In her December 2018 status report, Radack said that zero creditors appeared at her statutory meeting of creditors. ECF No. 80 at 1. She also did not mention any debts in this status report outside of "the claims against her." Id. at 2. In her January 2019 status report, Radack said only that she had "commenced the examination of claims against her to be addressed in a Chapter 11 Plan of Reorganization." ECF No. 81 at 1. And in a conference call on October 29, 2018, Radack's counsel said that any judgment in this case would be the biggest claim against Radack. Thus, there is a substantial evidentiary basis for Fitzgibbon's contention that Radack's bankruptcy action was not filed in good faith. Instead, it appears to be a tactic to try to secure transfer of this case to the District of Columbia."

[*ECF No. 82, fn. 3*].[1]

8. On February 15, 2019, Radack filed a status report in which she represented that she had filed a Chapter 11 Plan of Reorganization. [*ECF No. 84*]. Radack further stated as follows:

> "Along with the Plan, the Debtor filed a motion seeking to dispense with the requirement, under 11 U.S.C. §1125, of filing, obtaining approval of, and transmitting with the Plan a Disclosure Statement. That motion seeks relief authorized under Fed. R. Bankr. P. 3017(d). A hearing on that motion is set before the United States Bankruptcy Court for the District of Columbia on February 27, 2019. If granted, the process of confirming the proposed Plan will be accelerated, and may be considered by the Bankruptcy Court as early as the end of March or beginning of April 2019."

9. **Radack failed to file a status report with the Court in this case in March 2019**.

10. On February 27, 2019, Radack appeared before the District of Columbia Bankruptcy Court on her motion to dispense with disclosure statement. [*Case 18-00634-SMT (Doc 46)*].

11. By Order entered March 1, 2019, the Bankruptcy Court denied Radack's motion to dispense with disclosure statement, ordered Radack to file "truncated disclosure statement", and granted Radack leave to file an amended plan (making amendments to which she agreed at the February 27 hearing) by March 11, 2019, along with a disclosure statement. [*Case 18-00634-SMT (Doc 55)*].

12. **Radack failed to file an amended plan or disclosure statement**.

---

[1] Radack's various status reports filed with the Court in this case omit and, therefore, conceal the fact that there was a February 8, 2019 deadline in the bankruptcy case for filing proofs of claim. Radack violated the Court's Order that required her to disclose "***any*** developments [in the bankruptcy case] that affected the District Court action." [*ECF No. 75 (emphasis added)*].

13.     On her Schedule E/F, Part 2, filed in the bankruptcy case, Radack listed Fitzgibbon's claim as "disputed":

| 4.3 | Trevor Fitzgibbon<br>Nonpriority Creditor's Name<br>c/o Steven Biss<br>300 West Main Street<br>Suite<br>Charlottesville, VA 22903<br>Number Street City State Zip Code | Last 4 digits of account number<br><br>When was the debt incurred? | $10,000,000.00 |
|---|---|---|---|
| | Who incurred the debt? Check one.<br>■ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim is for a community debt<br>Is the claim subject to offset?<br>■ No<br>☐ Yes | As of the date you file, the claim is: Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed<br>Type of NONPRIORITY unsecured claim:<br>☐ Student loans<br>☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims<br>☐ Debts to pension or profit-sharing plans, and other similar debts<br>■ Other. Specify  lawsuit | |

[*Case 18-00634-SMT (Doc 18, p. 14*].

14.     Local Bankruptcy Rule ("LBR") 1007-3 of the United States Bankruptcy Court for the District of Columbia provides as follows:

> If a creditor's claim is listed on a schedule or amended schedule as disputed, contingent, or unliquidated, and the case is pending in Chapter 11, then:
>
> (a)     within 14 days after the filing of the first schedule or amended schedule that so lists the creditor's claim (or within 14 days after the case was converted to Chapter 11, if later), the debtor must file and serve on the creditor a notice of the listing and a certificate of service complying with LBR 5005-3; and
>
> (b)     the notice must state that the creditor has a right to file a proof of claim by the later of the bar date that would otherwise apply or 28 days after the date of mailing of the notice, and that the creditor's failure timely to do so may prevent the creditor from voting upon the plan or participating in any distribution thereunder.

15.     **In spite of LBR 1007-3, Radack never filed or served the required LBR 1007-3 notice on Fitzgibbon**.

16.     On March 1, 2019, the Bankruptcy Court entered an Order regarding Radack's failure to file and serve the required LBR 1007-3 notice. The Bankruptcy

Court observed that "[t]he docket in this case does not reflect the filing of a notice under LBR 1007-3 to the creditor whose claim was listed on the debtor's schedules as disputed [Fitzgibbon]. If one was issued, the debtor should file the notice. If one was not issued, the consequence may be that the creditor is still free to file a claim." The Bankruptcy Court

> "ORDERED that if no LBR 1007-3 notice was issued to the creditor whose claim was listed as disputed, then pending the debtor's evaluating and addressing the LBR 1007-3 issue, the debtor may elect not to proceed with filing an amended plan and disclosure statement as contemplated by the *Order re Motion to Dispense With Disclosure Statement*. It is further
>
> ORDERED that unless the court directs otherwise, a status hearing will be held on March 27, 2019, at 10:30 a.m. (with the debtor to report regarding the debtor's intentions regarding pursuing a plan if the debtor elects not to proceed with filing the amended plan and a disclosure statement as contemplated by the *Order re Motion to Dispense With Disclosure Statement*).

[*Case 18-00634-SMT (Doc 54)*].

17. On March 11, 2019, Fitzgibbon filed proof of claim, an objection to Radack's proposed Chapter 11 plan of reorganization, a motion to dismiss Radack's bankruptcy case pursuant to 11 U.S.C. § 1112(b)(1) for cause, and a motion for relief from the automatic stay to permit Fitzgibbon to proceed with discovery and trial of this action. [*Case 18-00634-SMT (Claim 2-1 and Docs 59, 61, 63)*].

18. In his motion to dismiss Radack's bankruptcy case, Fitzgibbon pointed out the obvious: Radack filed the bankruptcy case in bad faith solely as a litigation tactic to "re-locate" this case to the Bankruptcy Court in the District of Columbia. Subjective bad faith is routinely found where a bankruptcy filing is used to "relocate" a two-party dispute from a state or federal court to a bankruptcy court. In *Crown Financial Ltd.*, for example, the Court held as follows:

5

> "What has happened in this case is that a bitter, hotly contested controversy has boiled over from the state court into the bankruptcy court. Chapter 11 was not intended to provide an additional forum for the continuation of litigation over what is essentially a two-party dispute. An attempt to do so is an abuse of the bankruptcy process which warrants the dismissal of a Chapter 11 filing. *See In re Donuts of Seekonk,* 122 B.R. 172 (Bankr. D.R.I. 1990); *In re Edwards,* 140 B.R. 515 (Bankr. W.D.Mo. 1992); *In re Sutton,* 78 B.R. 341 (Bankr. S.D.Fla. 1987)."

183 B.R. 719, 723 (Bankr. M.D.N.C. 1995); *In re Nesenkeag, Inc.*, 131 B.R. 246 (Bankr. N.H. 1991) ("This Court has ruled before that 'two-party law suits' which are simply brought across the street from the state court to this court under the guise of a 'chapter 11 reorganization' may be dismissed for cause under the bad faith filing rubric under the applicable case law. Bad faith filing in this context does not itself mean bad mind or malicious activity, or even fraudulent activity, but simply the causing of a reorganization proceeding to be filed that does not fit within the intended scope of chapter 11 relief"); *id. In re Matthew M. Murray*, Case No. 14-10271 (Bankr. S.D.N.Y. 2016) (Decision and Order On Motion to Dismiss Involuntary Petition, p. 1) ("This case presents a variant of a common practice in cases in this Court and elsewhere—the filing of a case under the Bankruptcy Code as a tactic in a two-party dispute—though much more commonly in such situations, the abuser is the debtor and not a creditor.").[2] In his motion to dismiss, Fitzgibbon emphasized that Radack's bankruptcy case has no *raison d'être*. The underlying "bitter, hotly contested controversy" between Fitzgibbon and Radack has been

---

[2] In *Murray*, the Bankruptcy Court quoted extensively from the seminal decision in *C-TC 9th Avenue Partnership v. Norton Comp.* (*In re C-TC 9th Avenue Partnership),* 113 F.3d 1304 (2nd Cir. 1997), a Chapter 11 case dismissed under § 1112(b) of the Code. The Bankruptcy Court in *C-TC* dismissed the case because it found that the debtor had engaged in bad faith. Among several things that the Bankruptcy Judge had found as establishing bad faith, which supported the Second Circuit's affirmance of dismissal, were the facts that the filing was the outgrowth of a two-party dispute; that the dispute "could be fully resolved in a non-bankruptcy forum"; and that the primary function of the petition was to serve as a "litigation tactic." 113 F.3d at 1309-1310.

ongoing since April 2018, when Fitzgibbon filed his Complaint in this case. As this Court correctly observed when it denied Radack's motion to transfer venue, Radack filed her bankruptcy case in bad faith to avoid a scheduled jury trial and to "relocate" the pending two-party action to Bankruptcy Court.

19. In addition to her bad faith filing, Fitzgibbon argued in his motion to dismiss that Radack's conduct during the bankruptcy case warranted dismissal because it demonstrates that Radack is abusing the automatic stay. After she filed for bankruptcy and in spite of this Court's restraining Order [*ECF No. 41*],[3] Radack and her agents continue to defame and disparage Fitzgibbon. On January 18, 2019, for instance, Radack republished a statement that Fitzgibbon was a "serial sexual predator":



---

[3] The Court's Order restrains and enjoins Radack "from using Twitter or directing or enticing others to use Twitter or any other social media during the pendency of this action to publish or republish statements about … the character, credibility, or reputation of Plaintiff…."

In a February 8, 2019 tweet, Radack again referred to Fitzgibbon as a "predator":



The statement in Radack's tweet refers to Fitzgibbon. The reference to "@SharylAttkisson" is to five-time Emmy Award winning investigative journalist, Sharyl Attkisson [http://fullmeasure.news/people/sharyl-attkisson], and the word "smear" refers to a news program entitled "Shades of Grey", that aired on Sunday, June 3, 2018, on the Internet news site, *Full Measure News*:

8



The "one man" in the news program is Fitzgibbon. Radack is off the rails. In his motion to dismiss, Fitzgibbon showed that Radack's reckless disregard and violations of this Court's restraining Order continue. On February 18, 2019, a week after she filed her Chapter 11 plan of reorganization, Radack again took to Twitter, this time falsely accusing Fitzgibbon of committing the crime of adultery with a well-known journalist and activist in Berlin, Germany, named Diani Barreto. *See, e.g., Payne v. Tancil*, 98 Va. 262, 35 S.E. 725, 726 (1900) (statement that plaintiff was "keeping Mrs. Bowler", when taken in connection with the other words spoken, or considered by themselves, could only be understood to accuse the plaintiff of criminal intercourse and the crime of

9

adultery – statement was actionable *per* se, demurrer "properly overruled"); *id., Kelly v. Grigsby*, 2005 WL 533544, at * 3 (Loudoun Cir. 2005) (defendant's statement that plaintiff was "shacking up with a blonde from Hillsboro" was actionable as defamation *per se* – "a reasonable person could interpret Mr. Grigsby's statement that Mr. Kelly "shacked up with some blonde in Hillsboro" as meaning he was having an adulterous relationship"). Radack tweeted:



20. Fitzgibbon is hand-cuffed by the automatic stay. In addition to his motion to dismiss Radack's bankruptcy, Fitzgibbon filed a motion for relief from the automatic stay in order to continue with this case. Fitzgibbon's motions are pending before the Bankruptcy Court.

21. The Bankruptcy Court has scheduled a status hearing regarding the bankruptcy case for March 27, 2019, at 10:30 a.m. The Bankruptcy Court will consider at that hearing setting a hearing date for the motion to dismiss as well as a hearing date for a motion for relief from the automatic stay filed by Fitzgibbon.

TREVOR FITZGIBBON

By: */s/ Steven S. Biss*
    Steven S. Biss (VSB # 32972)
    300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
    Telephone:  (804) 501-8272
    Facsimile:  (202) 318-4098
    Email:  **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: */s/Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*