# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| TREVOR FITZGIBBON, ) <br> ) <br> PLAINTIFF ) <br> vs. ) <br> ) <br> JESSELYN A. RADACK, ) <br> ) <br> DEFENDANT ) | Civil Action No. 3:18-cv-247-REP |

## DEFENDANT'S REPLY TO COURT'S ORDER TO SHOW CAUSE

Defendant, Jesselyn A. Radack ("Radack"), by counsel, hereby responds to Plaintiff's Reply to Defendant's Response to Order to Show Cause ("Plaintiff's Brief"). Radack states as follows:

Since the inception of this case, Plaintiff has regurgitated the same irrelevant, inflammatory, and patently false accusations and Plaintiff's Brief in Reply to the Order to Show Cause continues with this improper course of conduct. Radack entered into a settlement of this case in a good faith attempt to "bury the hatchet." Indeed, on or about April 5, 2019, undersigned counsel called opposing counsel and asked him his client's position on the instant Order to Show Cause. Counsel for Plaintiff indicated that his client took no position on the Order to Show Cause and that he would not be filing a response brief unless ordered by the Court to do so because his client was of the belief that the issues raised in connection with the Order to Show Cause, including any purported harm, were resolved and subsumed by the settlement. Based upon the foregoing, undersigned counsel represented Plaintiff's position to the Court in the Opposition Brief. Opp.

1

Brief p. 3. Then in direct contradiction to these statements, Plaintiff filed a 28-page Reply Brief[1] basically requesting that the Court award him relief related to the merits of the underlying defamation claims which were settled and have nothing to do with the instant Order to Show Cause. It is entirely disingenuous for the Plaintiff to now claim that he should be compensated for claims raised in the underlying litigation that were admittedly resolved in the settlement and seek to conflate the merits of the underlying litigation with the Order to Show Cause issues. Plaintiff's Brief relies upon countless statements that are inherently misleading or patently false and Radack addresses each of these contentions in turn below:

### 1. **Claim that Radack Spoliated Evidence**

This is a false allegation that Plaintiff has raised at least five times throughout the pendency of this litigation, including in Plaintiff's Second Amended Complaint; this argument clearly goes to the merits of the underlying litigation, which was resolved via settlement, it is unrelated to the Order to Show Cause. (ECF Nos. 12, 20, 28, 60, and 77). Even assuming, *arguendo,* that any spoliation occurred it goes to the merits of the underlying litigation which was resolved via settlement and has no relation to the instant Order to Show Cause. Tellingly, at no point has Plaintiff ever filed a motion seeking relief related to the alleged spoliation, nor has Plaintiff ever identified what tweets he believes were deleted. There has never been an evidentiary hearing on this issue or determination that any spoliation has ever occurred. Moreover, Plaintiff's argument is completely debunked by the fact that prior to Radack recently engaging an IT Specialist to delete the tweets at issue in connection with the settlement of this case, the tweets at issue could have been accessed by clicking on the links provided by Plaintiff in his own Complaint.

---

[1] Pursuant to Local Rule 7(F)(3), rebuttal briefs shall not exceed twenty pages. Plaintiff's Brief which was filed in rebuttal to Defendant's Response to Order to Show Cause is 28 pages which greatly exceeds the page limitations set forth in this Court's Rules.

## 2. Claim that Radack's Mother Deleted Her Twitter Account

This is a false allegation that Plaintiff has raised at least five times throughout the pendency of this litigation, including in Plaintiff's Second Amended Complaint; this argument clearly goes to the merits of the underlying litigation, which was resolved via settlement, it is unrelated to the Order to Show Cause. (ECF Nos. 12, 20, 28, 60, and 77). Similar to Plaintiff's spoliation claim, at no point has Plaintiff ever filed a motion seeking relief related to this false accusation, nor it is likely that Plaintiff ever would have pursued such relief because it is clear that this allegation is not grounded in any fact. Plaintiff has never spoken with Radack's mother, issued any discovery on this issue, and has no basis to believe that Radack's mother ever deleted her Twitter account. Indeed, Radack's mother made her Twitter account "private" so that only her confirmed followers can see her social media posts, which explains why Plaintiff no longer has untethered access to view any of her social media accounts. Radack's mother is not a party to this case, Radack's mother is in no way prohibited from making any changes to her social media accounts that she deems necessary (including blocking Plaintiff from viewing her accounts), therefore it is unclear why Plaintiff has repeatedly raised this extraneous issue which has no bearing on this case. Plaintiff's inapposite and fallacious allegations related to Radack's mother should be completely disregarded by this Court.

## 3. Claim that Radack Misrepresented the Court's Ruling on Her Motion to Seal

No misrepresentation has occurred. The Court did Order the images contained in Plaintiff's Complaint to be redacted. (ECF No. 11, "ORDERED that, by close of business on April 26, 2018, the plaintiff shall file a redacted version of the Complaint that redacts completely all photographs or pictures contained within the COMPLAINT (ECF No. 1)").

### 4. Claim that Radack Submitted a False or Misleading Declaration to the Court

No misrepresentation has occurred. Plaintiff accuses Radack of lying under oath when she stated that: "I suffer from Multiple Sclerosis, and as a result I am often fatigued and in pain. Because of this condition, I would not be able to drive to Richmond. Traveling several hours from my home would be painful and physically difficult for me." (ECF No. 16-2, First Radack Decl. ¶ 4.). Plaintiff argues that this statement must be a lie because Radack has admitted to doing yoga and because Radack traveled via plane to a conference in Toronto.[2]

As explained by Radack in a subsequent declaration on September 14, 2018:

> In 1991, I was diagnosed with Multiple Sclerosis, a chronic neurological degenerative disease that progressively attacks the central nervous system. Resulting symptoms become progressively worse over time including but not limited to problems with vision, bladder, ambulation and fatigue. As a result, I do not drive at night and am unable to drive myself long distances. When I travel by air, I am able to get up and move and use the restroom but a lengthy trip by car on the notoriously backed-up section of Interstate 95 from D.C. to Richmond would be extremely difficult, painful, inconvenient and costly for me. I would have to pay for a driver and the fatigue from such a trip would mean additional hours would be diverted away from my work in order to rest after a lengthy day of travel for a court appearance.

(ECF No. 66-2, Second Radack Decl. ¶ 19.). Despite Radack's statements clearly explaining why it would be difficult for her travel to Richmond via car, Plaintiff still seeks to make a mockery of the fact that for the past 28 years Radack has suffered from Multiple Sclerosis ("MS") which is an unpredictable, often disabling disease that disrupts the flow of information within the brain, and between the brain and body. MS is not curable, however, there are options available to provide comfort and quality of life for those that are suffering from this debilitating illness. Radack

---

[2] In the prior briefs, where Plaintiff has raised this same argument, Plaintiff also stated that Radack was "photographed drinking beer and having a great time as part of the publicity for the conference." (ECF No. 28, p. 5; ECF No. 20, p. 9). In the most recent recitation of this argument, Plaintiff removes the reference to Radack "drinking beer." Perhaps this is because Radack was never photographed drinking beer and Radack cannot consume alcohol because of the interactions with medications she takes. Plaintiff's inclusion of this statement in his prior briefs illustrates that Plaintiff clearly has no qualms about persistently making fallacious statements that have no basis in fact.

should be applauded for her efforts to cope with this illness and attempt to maintain her quality of life which includes partaking in yoga and traveling via plane to attend work functions, not berated or admonished by Plaintiff who clearly lacks any understanding of the effects MS has on the body.

The National Multiple Sclerosis Society recommends people suffering from MS practice yoga as a way to reduce pain associated with the condition.[3] Moreover, it is a well-known fact that a person's driving performance may be negatively affected by symptoms associated with MS. For example, recent studies show that both cognitive changes and spasticity (muscle stiffness or spasms) affect driving performance, putting the person at an increased risk for an automobile crash.[4] In addition, difficulties with information processing and visual-spatial skills are associated with decreased driving performance. *Id.* In other words, MS can, and does in Radack's case, impact many functions necessary for safe driving, which is why Radack cannot drive long distances. These same difficulties are not implicated when flying on a plane, which is how Radack was able to attend the Toronto conference (ECF No. 66-2, Second Radack Decl. ¶ 19.). Plaintiff's illogical conclusion that because Radack "actively participates in yoga . . . belies her inability to drive to Richmond" is yet another misinformed and fallacious statement. Pl. Brief p. 6. Lastly, Plaintiff's position that Radack must have lied under oath because she "appeared on stage for a panel discussion for over an hour" and in his opinion "spoke with absolutely no difficulty whatsoever" exhibits not only his lack of empathy for those living with this disease but also his complete lack of understanding of the symptoms commonly associated with MS. Pl. Brief p. 5.[5]

---

[3] https://www.nationalmssociety.org/Living-Well-With-MS/Diet-Exercise-Healthy-Behaviors/Exercise/Yoga
[4] https://www.nationalmssociety.org/nationalmssociety/media/msnationalfiles/brochures/brochure-driving-with-multiple-sclerosis.pdf
[5] Plaintiff also cites to an article published by Radack more than 10 years ago entitled "Despite Multiple Sclerosis, I'm Doing Handstands in Yoga." The article was an occasional feature in the Washington Post in which readers write about living with chronic illness and the article discusses the symptoms of MS which Radack was experiencing in

### 5. Claim that Radack Freely Casts Aspersions on this Court and Alleged Defamatory Statements about Justice Thomas

Service as a public official means that one may not be viewed favorably by every member of the public. Radack's personal opinions about the justice system are her own and immaterial to the proceedings presently before this Court. Plaintiff is attempting to rely on extraneous evidence to cast aspersions on Radack's character which must not only be disregarded but should be frowned upon by this Court.

### 6. Claim that Radack Continued to Publish Defamatory Statements

It is inconsistent with the settlement for Plaintiff, under the auspices of the Order to Show Cause, to attempt to argue the merits of the underlying litigation. Plaintiff cannot genuinely state that he is "grateful the claims involved in this case are settled" and that this "case should have been settled long ago" but then at the same time seek to intertwine the settled issues with the separate and distinct issues raised in the Order to Show Cause and seek additional relief from this Court. The dates of the posts which Plaintiff refers to in his brief are of critical importance. Plaintiff references tweets which occurred on May 23, 2018, June 24, 2018, June 29, 2018, and two which were posted on July 11, 2018. <u>All of these posts pre-date the July 31, 2018, entry of the Restraining Order</u>. None of these tweets form the basis of Plaintiff's Notice of Non-Compliance with Court's Order Requiring Status Reports or the Order to Show Cause which is presently before the Court. Moreover, Plaintiff's statement that despite the pendency of this action and the "Court's admonition to Radack's counsel that Radack should 'stay of the airwaves,' Radack continued to use her Twitter account" is misleading. Pl. Brief p. 9. During

---

2009, not 2019. Radack described her illness as a "relapsing form of MS, in which [she had] periodic exacerbations that cause vision loss, numbness, tremors and vertigo." This article written over 10 years ago does not in any way support Plaintiff's argument that Radack lied under oath. If anything, it provides further support for Radack's statement as to why she is unable to drive long distances.

the June 13, 2018, teleconference between counsel for the parties, the Court cautioned counsel for *both* parties, including an instruction directly to Plaintiff's counsel that he should talk to his client about public statements Fitzgibbon has made during the pendency of this lawsuit. *See* Transcript of June 13, 2018, Conference, p. 18. These statements include those made by Plaintiff on his June 3, 2018, appearance on the show Full Measure with Sharyl Attkisson which has a viewership of approximately 700,000 or more. *Id.* Plaintiff provided to Full Measure nude pictures of Radack, as well as pictures of Radack wearing lingerie, which were featured on the show.

It is also important to note that both parties have filed defamation claims against each other, therefore if the Court were to entertain Plaintiff's argument on the merits of his defamation claims raised in his Second Amended Complaint, Radack should be equally entitled to submit evidence on the false and defamatory statements made by Plaintiff during the pendency of this lawsuit which are raised in Radack's Counterclaim, which include but are not limited to, the following:

a. On July 24, 2018, Stewart Lawrence published an article for the Daily Caller entitled "Fitzgibbon v. Radack: Another Circular Firing Squad on the Left?" The Daily Caller has more than 60 million monthly page views, it is the 85th most read website via mobile, it is the 149th most read website in the nation, it has 500,000 opt-in email subscribers, and 8 million plus social medial followers, surpassing rival sites such as The Washington Times, Politico, and Forbes. http://dailycaller.com/advertise/ Upon information and belief, Fitzgibbon provided the false and defamatory statements which were published in this article, which include statements that after Radack filed charges she "took to the pages of the Huffington Post and to Twitter to denounce her former colleague as a symbol of white male sexual privilege." Additionally, that

Fitzgibbon and Radack enjoyed a "consensual encounter," that Fitzgibbon and Radack "spent days eagerly planning a romantic tryst together," and that Radack has "moved to delete a series of incriminating tweets she posted in 2015."

    b.    On June 3, 2018, Fitzgibbon appeared on the show Full Measure with Sharyl Attkisson which has a viewership of approximately 700,000 or more. https://www.youtube.com/watch?v=JL8U3G8pKiQ;https://www.prnewswire.com/news-releases/ratings-for-full-measure-with-sharyl-attkisson-grow-by-76-regularly-beating-cable-news-programs-on-sunday-mornings-300390182.html On the show Fitzgibbon made numerous false and defamatory statements including that all sexual conduct between himself and Radack was 100% consensual, statements implying that Radack sent him text messages on December 8th after she was raped which indicate that she was "happy," and statements implying that Radack's allegedly false sexual assault claims have caused him to be vilified and lose his home and business.

    c.    On or about May 25, 2018, Fitzgibbon created a Wikipedia entry for himself that published the false and defamatory statement that Radack "leveraged her substantial following on Twitter, which includes her internationally renowned clients, to publish and republish multiple false and defamatory statements." http://deletionpedia.org/en/Trevor_Scott_FitzGibbon

    d.    Upon information and belief, on May 18, 2018, Fitzgibbon instructed his long-time friend Kevin Gosztola to publish the blog post entitled "Whistleblower Attorney Faces Lawsuit Alleging Defamation and Malicious Prosecution Over Sexual Assault Allegations." *See* https://shadowproof.com/2018/05/18/whistleblower-attorney-faces-lawsuit-alleging-defamation-and-malicious-prosecution-over-sexual-assault-allegations/ Upon information and

belief, Fitzgibbon provided Gosztola with the false and defamatory statements that Fitzgibbon and Radack had consensual sex, that "Radack fabricated the criminal charges out of whole cloth, knowing the charges to be false, and with reckless disregard for the truth."  In addition, that "Radack manufactured crimes and lied to cover up her adultery to further her prominent career," that Radack "leveraged her substantial following on Twitter . . . to publish and republish multiple false and defamatory statements."

  e. Upon information and belief, on or about May 10, 2018, Fitzgibbon, through his former business partner Ann Szalkowski and current attorney, issued a press release to the media falsely and disparagingly stating that: (1) "[w]hen [the] US Attorney refused to press charges, Radack used following of intel experts and celebrities to harass, stalk, intimidate Fitzgibbon, [and] his clients for 2 years;" (2) that Radack stalked Fitzgibbon with malicious untruths and that she "gambled with the safety of whistleblowers and the integrity and critical mission of ExposeFacts;" and (3) that "[w]ithin hours of being sued for malicious prosecution Ms. Radack violated a document preservation letter, deleting two years of online evidence in what must have been a frantic all-nighter of attempted spoliation."

  g. Upon information and belief, Fitzgibbon also posted false and defamatory comments under alias twitter accounts and then later deleted said accounts.  These accounts include but are not limited to, @ScottAldrich10, @TomeeHiro, @chronictown3, and @ReconnectJ.

  It is Radack's position that allowing evidence on any of the foregoing defamation issues is counterproductive to the purpose of settlement which is to avoid the additional time, expense and uncertainty of further litigation.  Moreover, the issue of purported defamation by both parties which predate the Restraining Order and the Order to Show Cause is not germane to the issues

presently before this Court. For these reasons, the Court should disregard Plaintiff's belated and calculated attempt to litigate issues that were previously resolved between the parties and which are unrelated to the Order to Show Cause.

### 7. Claim that Radack Filed Bankruptcy in Bad Faith

Plaintiff filed a Motion to Dismiss Radack's Bankruptcy case based upon his allegation that it was filed in bad faith. Plaintiff's Motion to Dismiss is currently pending before the US Bankruptcy Court for the District of Columbia. Due to the settlement between the parties, no opposition brief was filed by Radack. The pending Motion to Dismiss, along with Radack's Bankruptcy Case, is scheduled to be dismissed upon approval of the settlement by the Bankruptcy Court. Therefore, no ruling has been made on whether or not Radack's Bankruptcy Case was, as Plaintiff's contends, filed in bad faith. Radack submits to the Court that if the issue was decided by the DC Bankruptcy Court she would prevail. Moreover, Radack's bankruptcy counsel was under the impression that the status reports were intended to summarize the status of the bankruptcy proceedings, not detail all of the creditor claims, her debts, or all of the filings made in conjunction with her bankruptcy. All of the documents filed in the Bankruptcy Case were however sent to Plaintiff's counsel so that Plaintiff would be apprised of all aspects of the Bankruptcy Case. Radack does indeed have debts other than the claims made by Plaintiff and the fact of whether her creditors chose to appear at her meeting of creditors is inconsequential to the validity of her bankruptcy filing. Lastly, it was not until the Bankruptcy Case had been pending for more than six months did Plaintiff even allege that the Bankruptcy Case was filed in bad faith.

### 8. Claim that Radack Violated the Restraining Order

All of the tweets discussed in this section of Plaintiff's brief are set forth in Plaintiff's Notice of Non-Compliance with Court's Order Requiring Status Reports. Radack's position on

these tweets is set forth in her Response to Order to Show Cause filed on April 8, 2019. Radack disputes that any spoliation, half-truths or misleading statements about her medical condition have ever occurred as discussed *infra*. The Plaintiff's attempt to conflate the issues before this Court should be rejected and Plaintiff's fallacious statements that are not grounded in any fact should be disregarded by this Court.

### 9. Claim that the "Attacks" on Radack Did Not Begin Until February 16, 2019

Nowhere in Radack's Opposition Brief does she claim that the defamation campaign against her began on February 16, 2019, nor does Exhibit A support this conclusion. Plaintiff's argument also disregards the fact that Radack has been the "victim of an ongoing and vicious defamation campaign by *numerous* Twitter proxy accounts," not just @RADACKwatch, but others such as @WL_Guard and @Trevor Firzgibbon. Opp. Brief p. 2. Indeed, in Paragraph 12(g) of Radack's Counterclaim which was filed in August of 2018, she identifies several proxy Twitter accounts which posted false and defamatory comments about her that she believed to be associated with Plaintiff.

### 10. Claim that Radack Knew Fitzgibbon Had Nothing To Do With Any "Attacks" on Her

Plaintiff spends four pages of his brief defending the @RADACKwatch posts before he says, "Fitzgibbon does not know who or what @RADACKwatch is . . .". None of Plaintiff's arguments have any bearing on whether Radack had a credible belief that Plaintiff was associated with the @RADACKwatch account and several other proxy accounts which have defamed and slandered her on Twitter. First, the fact that the proxy account @RADACKwatch published a tweet saying "I'm not Trevor Fitzgibbon" does not establish who is or is not associated with the account, nor does it undermine the validity of Radack's belief that Trevor Fitzgibbon was in some way affiliated with @RADACKwatch. Second, Twitter posts in German do not prove that

@RADACKwatch is German or speaks/writes fluent German, Plaintiff only cites to one Twitter post made by @RADACKwatch which is in German, but Plaintiff fails to mention that any Twitter user can easily translate their posts to a foreign language by clicking on a few buttons on their page. Third, in addition to threatening to disseminate sexually explicit images of Radack that were only provided to Plaintiff, the @RADACKwatch account also posted Radack's deposition taken in this case which is not publicly available via PACER or any other means. None of the arguments raised by Plaintiff cast doubt upon Radack's credible belief that the vicious Twitter campaign against her was informed, encouraged, and/or orchestrated by Plaintiff.

It would be impossible to post here the full history of the ongoing defamation campaign by numerous Twitter proxy accounts which appear to have been setup for the sole purpose of threatening, intimidating, and harassing Radack. Plaintiff's labored attempt to pull single Tweets out of conversation strings and use those Tweets, which are taken completely out of context, to support his positions should also be disregarded. Moreover, it is not reasonable to infer, as Plaintiff would like the Court to believe, that every comment that Radack makes on Twitter is somehow related to or "of and concerning" Trevor Fitzgibbon. For example, Plaintiff discusses a Twitter exchange on March 15, 2019, which occurred between Carrie A. Goldberg, a lawyer at CA Goldberg Law, who talks generally about defamations lawsuits which is Goldberg's primary practice area. Radack responds about the exorbitant costs of defending such lawsuits, Plaintiff is not mentioned in this exchange, nor is there any implication that the exchange is "of or concerning" Plaintiff. The crux of Plaintiff's arguments in support of his claim that "Radack Has Always Been on the Offensive" is based upon nothing more than paranoid speculation and does nothing to disprove that Radack is indeed the victim.

Plaintiff also argues that the @Kaidinn/@_whitneywebb tweets remain active on Twitter. Contrary to Plaintiff's argument, Radack has no ability to delete tweets of third-parties, she can only "unlike" them, which her IT Specialist has done. To be clear, Radack has no agents, family members, co-workers, colleagues, proxies, or anyone else whom she has directed or enticed to post anything about Plaintiff. Dozens or more women have accused Plaintiff of sexual misconduct in the past, therefore it is not surprising that many third parties have posted their opinions of Plaintiff's behavior on social media. Plaintiff's tortured attempt to somehow link Radack to every third-party who posts any derogatory comment about him on social media, and then seek a windfall under the Order to Show Cause is not only improper, but circumvents both the letter and the spirit of this Court's Restraining Order and the parties' Settlement Agreement. For these reasons, the Order to Show Cause should be dismissed.

WHEREFORE, Defendant, Jesselyn A. Radack requests that this Court dismiss the Order to Show Cause and for such other and further relief as this Court deems appropriate and just.

Dated: April 23, 2019

Respectfully submitted,

   /s/ D. Margeaux Thomas
D. Margeaux Thomas (VSB #75582)
The Thomas Law Office PLC
11130 Fairfax Blvd., Suite 200-G
Fairfax, VA 22030
Telephone: 703.957.2577
Facsimile: 703.957.2578
Email: mthomas@thomaslawplc.com
*Counsel for Defendant Jesselyn A. Radack*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2019, a copy of the foregoing document was filed with the Court electronically. Notice of this filing will be sent automatically by the Court's CM/ECF system to the following parties:

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, VA 22903
*Counsel for Plaintiff*

                                              /s/ D. Margeaux Thomas
                                              D. Margeaux Thomas (VSB #75582)